**FILED**

July 19, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ lad

DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

HENRIK HAUSCHILDT          )
                          )
                *Plaintiff,*          )
                          )
vs.                          )          Cause No: 6:24-cv-00086-ADA-JCM
                          )
AGTEXAS FARM CREDIT SERVICES          )
                          )
                *Defendant.*          )
_____)_____

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff HENRIK HAUSCHILDT, by and through Henrik Hauschildt, agent, in opposition to Defendant AgTexas Farm Credit Services' Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectfully submits this Response and shows the Court the following:

Plaintiff's Amended Complaint presents substantial and well-founded claims which clearly establish the subject-matter jurisdiction of this Court and adequately state claims for which relief can be granted. Defendant's motion, largely based on a misinterpretation and misrepresentation of the facts and legal theories set forth in the Amended Complaint, fails to demonstrate that dismissal is warranted under the cited rules. Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss in its entirety and allow the case to proceed to discovery and trial.

**I.      Rebuttal to Defendant's Arguments**

**1.  Clarification on the Nature of the Transaction**

1

On page two of the Defendant's Motion to Dismiss, it is stated that "Plaintiff complains of two loans extended by Defendant AgTexas." This assertion is incorrect and misleading. There was never a "loan" extended by the Defendant. Instead, the Defendant took the original promissory note, which Henrik Hauschildt indorsed and tendered, to the Federal Reserve Discount Window to fund this transaction. As a result, Henrik Hauschildt is the secured party in this transaction, while AgTexas merely acted as a currency exchange. This distinction is crucial in understanding the nature of the transaction and the respective roles of the parties involved. Notably, in ***National Bank of Commerce v. Atkinson***, 55 F. 465 (1893), it was held that a national bank cannot lend its credit or become an accommodation endorser, highlighting that banks facilitate transactions rather than create loans.

Furthermore, Plaintiff believes that AgTexas did not lend its own money in this transaction. To verify this crucial component, Plaintiff seeks to examine the ledger transactions through the discovery process. This examination will provide clarity on the actual flow of funds and substantiate the Plaintiff's claims regarding the nature of the transaction.

## 2.  Federal Jurisdiction and Noncitizen National Status

On page three of the Defendant's *Motion to Dismiss*, it is stated that "The remaining causes of action pled by Plaintiff in his Amended Complaint are various state law claims." This is a mischaracterization. Due to Henrik Hauschildt being a noncitizen national of the United States in accordance with 8 U.S.C. § 1101(a)(22)(B), as well as eligible for a passport via 22 U.S.C. § 212, these claims are appropriately pled in Federal court rather than State court. If it is desired to add the natural person, Henrik Hauschildt, as an official plaintiff alongside HENRIK HAUSCHILDT, then that can be done to clarify the parties. HENRIK HAUSCHILDT is a resident of the State of Texas, while Henrik Hauschildt is not. This distinction is crucial in establishing the correct jurisdiction for this case and ensuring that the plaintiff's rights are fully protected under federal law.

2

### 3.   Addressing Claims of Frivolousness

On page three of the Defendant's Motion to Dismiss, it is alleged that the complaint is "frivolous." According to Cornell Law Online, "A frivolous claim, often called a bad faith claim, refers to a lawsuit, motion, or appeal that is intended to harass, delay, or embarrass the opposition. A claim is frivolous when the claim lacks any arguable basis either in law or in fact," as established in *Neitze v. Williams*, 490 U.S. 319, 325 (1989). This means that a frivolous claim is one where either: "(1) the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy;" or (2) "the claim is 'based on an indisputably meritless legal theory,'" as noted in *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).

It appears as though the defendants are trying to ridicule and debase the concept of real-life debt slavery, insinuating that debt slavery is "delusion" or "fantasy." Additionally, it seems that the defendants are attempting to degrade and debase the Uniform Commercial Code ("UCC") Article 3 as well as the Texas Business and Commerce Code. The defendant's implication that this suit is filed in "bad faith" is unsubstantiated and misleading. Cornell Law Online defines "bad faith" as dishonesty or fraud in a transaction, which may involve a dishonest belief or purpose, untrustworthy performance of duties, neglect of fair dealing standards, or fraudulent intent.  This principle is also supported by *Coghlan v. Starkey*, 852 F.2d 806, 812 (5th Cir. 1988), which discusses the standards for bad faith claims and emphasizes fair dealing in transactions.

This *Motion to Dismiss* is a weak and futile attempt to skirt and avoid the main points of the original complaint, which concerns the negotiation and indorsements on the original promissory notes that AgTexas used as collateral securities. The motion is, factually, frivolous. The crucial aspects of negotiation and indorsement are not even addressed in the *Motion to Dismiss*. The defendant's actions seem intended to degrade the seriousness of debt slavery and to dismiss the importance of the UCC and

the Texas Business and Commerce Code. It is also being done to annoy the plaintiff, waste the court's time, and paint the plaintiff as "delusional" or "operating on fantasy" regarding real and actual debt slavery.

On page four, the defendants continue their attack on the legal principles governing negotiable instruments, negotiation, dishonor, and other critical aspects of AgTexas's operations. If UCC Article 3 and the Texas Business and Commerce Code were truly "delusional," AgTexas would cease to exist. By attempting to negate the very principles on which their entire operation is founded, the defendants demonstrate bad faith and an intent to mislead this honorable court.

It is a fact that this "loan" was funded by securitizing the original promissory note after it was unknowingly indorsed with a blank indorsement by Henrik Hauschildt. Henrik Hauschildt was the holder of the note, then indorsed it without stating the payee of the note (blank indorsement), then the note was tendered to AgTexas, then that note was accepted by delivery. As the holder of the notes, AgTexas then indorsed the instruments with a qualified and special indorsement and took it to the Federal Reserve Discount Window, or they simply traded the original notes or negotiated them in some way to get Federal Reserve Notes in exchange for the notes (whether they "sold" it, traded it, or collateralized it—this can all be clarified in discovery).

### 4. Clarification on Currency Exchange

On page six of the Defendant's *Motion to Dismiss*, it is stated that "Plaintiff pleads that a loan or loans was entered with AgTexas, and thus a debt created to AgTexas." This statement is only partially accurate. While it is true that the original blank negotiation created an initial obligation, under the current qualified and special negotiation concerning the instruments, AgTexas is now solely and exclusively functioning as a "currency exchange." This transaction is fundamentally an exchange of one

4

currency—namely, the original promissory notes with a special/qualified indorsement—for another currency, Federal Reserve Notes, at the Federal Reserve Discount Window. The characterization of this transaction as a loan is a misrepresentation of the actual financial mechanics involved.

## 5. Duty to Inform Regarding Indorsement

On page six of the Defendant's *Motion to Dismiss*, it is claimed that "Plaintiff alleges that AgTexas owed some duty to Plaintiff to offer Plaintiff an option to make a 'special indorsement' versus a 'blank indorsement' on these loans but does not specify the source of that duty." This assertion is not only incorrect but also morally questionable. To state that AgTexas did not have a duty to inform the indorsee of the instrument that he was about to potentially fund his own financial enslavement is indicative of the low level of morality that AgTexas operates with.

AgTexas, in this transaction, acts as a currency exchange and not as a lender (since no actual lending occurred). The indorsee of the original instrument should have been informed that he was releasing the instrument with a blank indorsement, not only due to the fiduciary duty that a currency exchange holds to ensure the proper negotiation of an instrument but also because AgTexas cannot justify peonage and debt slavery by questioning the source of their duty. The duty arises from basic human decency and the ethical obligation to assist another person, which cannot be dismissed by hiding behind a corporate veil or the false notion that AgTexas is a lender.

This behavior by AgTexas exemplifies their lack of scruples by attempting to justify the debt slavery operation imposed on honest American farmers. The principle of "good faith" alone is sufficient to assert that all indorsees should be aware that they are potentially funding their own enslavement.

## 6. Validity of Attorney-in-Fact

On page six of the Defendant's *Motion to Dismiss*, the defendants discuss Brandon Joe Williams as the "alleged" attorney-in-fact, despite having already been sent the Power of Attorney that clearly delineates this. The defendants' attempt to cast doubt on Mr. Williams' authority and role as attorney-in-fact is both unfounded and misleading. The Power of Attorney document provided to the defendants is legally binding and should have resolved any doubts regarding Mr. Williams' status and authority. The defendants' continued reference to him as the "alleged" attorney-in-fact despite clear documentation is a disingenuous tactic aimed at undermining the legitimacy of the plaintiff's claims and the authority of his representation.

### 7.  Specificity of Orders Sent by Attorney-in-Fact

On page six of the Defendant's *Motion to Dismiss*, it is stated that attorney-in-fact Brandon Joe Williams "sent certain unspecified orders to AgTexas that supposedly eliminated all collateral and security interests in favor of AgTexas, constituting payment in full of the loan." This characterization is incorrect. The orders sent by Mr. Williams were quite specific and detailed, clearly outlining the actions taken to eliminate all collateral and security interests in favor of AgTexas and to constitute payment in full of the loan. These orders will be added to this document as *Exhibit A* to provide the court with the necessary specificity and clarity. The defendants' portrayal of these orders as "unspecified" is a misrepresentation intended to undermine the legitimacy of the actions taken by Mr. Williams in his capacity as attorney-in-fact.

### 8.  Inclusion of Power of Attorney Document

A copy of the Power of Attorney between Brandon Joe Williams and Henrik Hauschildt will be included here as *Exhibit B*. This document clearly delineates the authority granted to Mr. Williams to act as attorney-in-fact for Mr. Hauschildt, countering any claims by the defendants that his role or actions are unauthorized or unspecified. The inclusion of this exhibit provides concrete evidence of Mr.

Williams' legal standing and authority in this matter, reinforcing the legitimacy of the orders he issued to AgTexas.

### 9.  Proof of Receipt

The signed USPS Form 3811, proving that Exhibits A and B were received by AgTexas, will be enclosed here as *Exhibit C*. This form serves as documented evidence that AgTexas was properly notified and received the specific orders outlined in Exhibit A, as well as the Power of Attorney detailed in Exhibit B. This receipt counters any claims by the defendants that they did not receive these crucial documents, further substantiating the plaintiff's position and the legitimacy of the actions taken by attorney-in-fact Brandon Joe Williams.

### 10. Irrelevant Response by AgTexas

AgTexas, on January 26th, 2024, proceeded to send an entirely irrelevant response to the orders issued by Brandon Joe Williams. This response failed to address the specific orders and the issues raised, thus constituting a failure to respond appropriately and a failure to perform their obligations as outlined in the orders. This response will be added as *Exhibit D* to provide clear evidence of AgTexas's non-compliance and disregard for the specific directives issued by the attorney-in-fact.

### 11. Clarification on the Nature of the Transaction and Request for Original Note

On page six of the Defendant's *Motion to Dismiss*, it is stated: "All of Plaintiff's causes of action are based on Plaintiff's wholly unsubstantiated belief and conclusory statements that he is now the holder and payee of these loans, not AgTexas, and that he has been damaged by AgTexas's failure to eliminate the debt, release the collateral, and pay back any amounts allegedly paid by Plaintiff on these loans."

First, there were never any "loans" in the conventional sense. Instead, there was a slight of hand where the original promissory notes were swapped for Federal Reserve Notes, or the original note was sold or transferred in some way to "fund" the loan. This was an "exchanging of currency," not a loan.

Second, Henrik Hauschildt hereby requests the ORIGINAL (not a copy, facsimile, or duplicate) of the note as it was negotiated to the Federal Reserve Discount Window. This request is critical to substantiate the claims made and to reveal the true nature of the transaction, demonstrating that it was an exchange rather than a loan.

### 12. Clarification on Negotiable Instruments vs. Money

At the end of page six and continuing into page seven, the Defendant's Motion to Dismiss includes irrelevant statements about "redemption" and bills of exchange, implying that the complaint involves discussions about money. This is incorrect and misleading. The Plaintiff's complaint does not concern "money," "vapor," or "theories." The defense's assertions suggest either a fundamental misunderstanding of their own industry or a deliberate attempt to misrepresent the Plaintiff's claims.

This complaint is strictly about negotiable instruments, as governed by UCC Article 3. According to UCC 3-102(a), "This Article applies to negotiable instruments. It does not apply to money." The focus is on the negotiation, indorsements, and application of UCC Article 3. It is unnecessary and incorrect for the defense to introduce unrelated concepts such as "money," "vapors," "theories," or "redemption" into this discussion.

The Plaintiff should not have to address and oppose arguments based on statements that were never made in the original complaint. The complaint is clear in its focus on the legal and factual aspects of negotiable instruments, not on any misguided notions presented by the defense.

**13. Relevance of Plaintiff's Claims**

At the top of page eight, the Defendant's *Motion to Dismiss* states: "Because Plaintiff's frivolous and largely nonsensical claims are based on tenuous and unfounded theories rejected by federal courts across the nation for over 25 years." This assertion is both incorrect and irrelevant. The examples cited by the defense have nothing to do with the issues at hand in this case.

The Plaintiff's complaint focuses on the specific legal principles of negotiation, indorsements, and UCC Article 3. These principles are well-established and governed by the Uniform Commercial Code, which clearly delineates the rules and regulations surrounding negotiable instruments. The defense's reference to unrelated and rejected theories does not apply to the facts and legal arguments presented in this complaint.

Given the clear and focused nature of the Plaintiff's claims, which revolve around negotiation and indorsements as per UCC Article 3, the complaint should easily survive this *Motion to Dismiss*. The defense's attempt to conflate the Plaintiff's well-founded legal arguments with unrelated and dismissed theories is a baseless tactic that does not address the actual substance of the complaint.

**14. Acknowledgement of Loan and Fraudulent Misrepresentation**

At the bottom of page eight, the Defendant's *Motion to Dismiss* states: "Plaintiff's Complaint acknowledges that the loans were voluntarily entered into and that all credit extended under the loans was with his permission." While it is true that the Plaintiff initially believed he was being provided a legitimate loan and thus gave permission under this delusion, this belief was based on fraudulent misrepresentation by AgTexas.

The Plaintiff was led to believe that AgTexas was providing a genuine loan to assist him, not realizing that he was being deceived into negotiating the original instrument with a blank indorsement.

9

This deceitful act resulted in the Plaintiff unknowingly funding his own financial enslavement. The initial permission was given under false pretenses and a misunderstanding of the true nature of the transaction. The Plaintiff's acknowledgment of entering into the loan voluntarily does not negate the fraudulent foundation upon which that consent was obtained.

### 15. Demonstration of Peonage

At the top of page nine, the Defendant's Motion to Dismiss claims: "Plaintiff cannot demonstrate that his circumstances qualify as peonage because he was not 'bound by the threat of a penal sanction to remain at his employment until [a] debt has been discharged.'" This assertion is absolutely laughable given the current state of affairs. AgTexas has an ongoing state case and has already secured a temporary restraining order against the Plaintiff, which will be included here as ***Exhibit E***.

The defendants are engaging in precisely the behavior that constitutes peonage. They have even attempted to seize the Plaintiff's livestock without a court order, clearly demonstrating their coercive tactics. The defendants are blatantly lying and attempting to mislead this court by denying the peonage situation. The Plaintiff is indeed in a situation of peonage, seeking to release himself from the invisible shackles of fake debt created by the original promissory notes, which were negotiated unknowingly by the Plaintiff using a blank indorsement. The temporary restraining order and the defendants' actions provide clear evidence of the coercive measures being taken, thus supporting the claim of peonage.

### 16. Request for Limited Discovery

Henrik Hauschildt hereby requests that this most honorable court move this case into limited discovery. The intent is not to use discovery as a "fishing expedition," but rather to cut through the ongoing misrepresentations and feigned ignorance by the defense regarding their professional

operations. By opening limited discovery, the defendant can be required to show EXACTLY, in painstaking detail, how this so-called "loan" was actually funded.

This process involves meticulously going through each individual step to demonstrate the funding mechanism. Any defense claim that this information is "proprietary" is entirely unfounded and preposterous, as the procedure is published in 12 USC 412. Additionally, we can subpoena the Federal Reserve to obtain the necessary documentation, ensuring transparency and clarity in this matter. This approach will provide definitive answers and address the core issues at hand, thereby facilitating a just resolution.

### 17. Request for Production of Original Promissory Notes

Henrik Hauschildt also hereby requests that this most honorable court include, in the limited discovery request, a directive for the defendant to produce the ORIGINAL promissory notes with all indorsements that may be present on those notes. While this request aligns with the objectives outlined in paragraph #16, it is essential to be explicit and leave no room for interpretation.

Under UCC 3-309, entitled "Enforcement of Lost, Destroyed, or Stolen Instrument," the plaintiff can become the holder of the notes if the originals are not produced and substantiated. This provision underscores the importance of presenting the original documents to verify the legitimacy of the transactions and to determine the rightful holder of the instruments. This request aims to ensure full transparency and accountability in the discovery process, reinforcing the plaintiff's position and protecting his legal rights.

### 18. Defense's Attempt to Degrade UCC Article 3 and Texas Business and Commerce Code

11

On page ten of the Defendant's Motion to Dismiss, there is a continued attempt to degrade both the Uniform Commercial Code, Article 3, and the Texas Business and Commerce Code. This behavior suggests that either the defendant is extremely ignorant of his own industry or is deliberately feigning ignorance to make the plaintiff appear uninformed. This tactic is ironic because the plaintiff has a solid understanding of UCC Article 3 and holds it in high regard.

The plaintiff would like to make it abundantly clear that ignorance is neither an excuse nor a defense, particularly when the subject matter of the plaintiff's complaint directly pertains to the defendant's industry, not the plaintiff's. If the defense truly lacks understanding as their motion to dismiss suggests, then their competence in their professional field is in serious question. Ignorance of the relevant laws and regulations is not a valid defense, especially when those laws are fundamental to the defendant's industry.

### 19. Fiduciary Duty of AgTexas as a Currency Exchange

On page ten of the Defendant's *Motion to Dismiss*, it is stated: "Plaintiff's breach of fiduciary duty claims must also fail because Texas law does not recognize a fiduciary duty by a financial institution to its customers." This assertion is absolutely untrue. In the context of this contractual situation, AgTexas is acting as a currency exchange, not merely as a financial institution.

As a currency exchange, AgTexas does have a fiduciary responsibility to the plaintiff. The nature of the relationship between the plaintiff and AgTexas involves the handling and negotiation of promissory notes, which places a fiduciary duty on AgTexas to act in the best interest of the plaintiff. The defendant's attempt to deny this fiduciary duty is a misrepresentation of their responsibilities and obligations in this contractual situation.

12

**20. Validity of Plaintiff's Claims Under UCC Article 3**

On page ten, moving into page eleven, the Defendant's Motion to Dismiss states: "Plaintiff's claims for unjust enrichment and money had and received are also based on his unsubstantiated (and judicially rejected) conclusory statements that he is now the holder/payee of the loans, that AgTexas improperly required "blank indorsement" on the loan, and that any collateral held by AgTexas is fraudulent."

This statement is misleading. None of the provisions under UCC Article 3 are "unsubstantiated" or "judicially rejected." The Plaintiff's claims are firmly grounded in the well-established principles of UCC Article 3, which governs negotiable instruments. The arguments regarding the improper requirement of a blank indorsement and the fraudulent nature of the collateral are based on these principles. The defense's attempt to dismiss these claims as unsubstantiated or rejected by courts is inaccurate and fails to address the substantive legal issues raised by the Plaintiff.

**21. Validation of Plaintiff's Claim for Money Had and Received**

At the bottom of page ten, the Defendant's Motion to Dismiss states: "The elements of a claim for money had and received are that (1) the defendant holds money and (2) the money in equity and good conscience belongs to the plaintiff." This statement is exactly correct and aligns with what the Plaintiff has been asserting repeatedly.

By acknowledging these elements, the defense inadvertently verifies the cause of action for the Plaintiff. The Plaintiff has consistently claimed that AgTexas holds money that, in equity and good conscience, belongs to the Plaintiff. This admission by the defense supports and validates the Plaintiff's claims under the doctrine of money had and received.

**22. Application of UCC 3-306**

13

UCC 3-306 states: "A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds. A person having rights of a holder in due course takes free of the claim to the instrument."

This provision exemplifies the Plaintiff's current actions with the orders sent and the complaint initiating this lawsuit. The Plaintiff is asserting a property or possessory right in the instrument and its proceeds, as permitted under UCC 3-306. The Plaintiff's actions are aimed at rescinding the negotiation and recovering the instrument or its proceeds. This statute supports the Plaintiff's position and the legitimacy of the claims made in the complaint. Negotiation has been rescinded, and the Plaintiff is exercising his rights under UCC 3-306.

## 23. Verification of Plaintiff's Unjust Enrichment Claim

On page eleven, the Defendant's Motion to Dismiss states: "A party may recover under the cause of action of unjust enrichment when a person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." This statement perfectly aligns with the Plaintiff's claims.

The Plaintiff has consistently asserted that AgTexas obtained a benefit through fraudulent means, duress, and by taking undue advantage. By acknowledging the elements of unjust enrichment, the defense inadvertently verifies and solidifies the Plaintiff's complaint. The Plaintiff's claims are directly supported by the definition provided, further reinforcing the legitimacy of the cause of action for unjust enrichment.

## 24. Legitimacy of Plaintiff's Claims Regarding Indorsements

On page eleven, the Defendant's *Motion to Dismiss* states: "Plaintiff's claims for fraud against AgTexas based on the alleged 'failure to disclose the terms and options of signing/indorsing above

14

collateral securities.' As detailed in previous sections, Plaintiff's claims based on 'special indorsement' versus 'blank indorsement' are wholly unsubstantiated and conclusory, nonsensical, and frivolous with no basis in any pleaded facts or law and should be dismissed for these reasons."

However, UCC 3-205, entitled "SPECIAL INDORSEMENT; BLANK INDORSEMENT; ANOMALOUS INDORSEMENT," explicitly states:

1. **Special Indorsement (UCC 3-205(a))**: If an indorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and the indorsement identifies a person to whom it makes the instrument payable, it is a "special indorsement." When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person.

2. **Blank Indorsement (UCC 3-205(b))**: If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "blank indorsement." When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.

3. **Conversion of Blank to Special Indorsement (UCC 3-205(c))**: The holder may convert a blank indorsement that consists only of a signature into a special indorsement by writing, above the signature of the indorser, words identifying the person to whom the instrument is made payable.

This clearly substantiates the Plaintiff's claims regarding the significant legal differences between special and blank indorsements. The defense's dismissal of these claims as "unsubstantiated and conclusory" is either a gross misunderstanding or a deliberate misrepresentation of UCC Article 3.

There are three potential explanations for the defense's stance:

15

1. The defense is unaware of UCC 3, akin to an infant or person of unsound mind (ward of the court).

2. The defense is aware of UCC 3 but is feigning ignorance (a poor defense strategy).

3. The defense is genuinely ignorant of UCC 3 (in which case, their competence in this matter is highly questionable).

The Plaintiff's claims are well-grounded in UCC 3-205, and the defense's attempts to dismiss them as frivolous are baseless and without merit.

**25. Elements of Fraud and Plaintiff's Claims**

On page eleven of the Defendant's *Motion to Dismiss*, it is stated: "According to the Fifth Circuit, the elements of fraud include: (1) a misstatement or omission; (2) of material fact; (3) made with the intent to defraud; (4) on which the plaintiff relied; and (5) which proximately caused the plaintiff's injury."

Here is how the Plaintiff's claims align with these elements of fraud:

1. **Misstatement or Omission**: The omission of critical information regarding the negotiation and funding of the transaction.

2. **Material Fact**: The fact that a currency exchange took place, rather than a traditional loan.

3. **Intent to Defraud**: The financial benefits available to AgTexas under a blank indorsement are significantly greater than those under a qualified or special indorsement. AgTexas's failure to disclose this and its insistence on a blank indorsement indicates a clear intent to defraud.

4. **Plaintiff's Reliance**: The Plaintiff relied on the expectation of help and assistance from AgTexas. The Plaintiff, who has a farm, a family, and living animals to care for, expected good faith from AgTexas. Instead, he was financially enslaved.

16

5. **Proximate Cause of Injury**: Referring to this as simply "injury" is an understatement. The Plaintiff was placed in a peonage situation where his entire farm was illegally "collateralized," and he was tricked into funding his own enslavement. This situation goes beyond mere injury and is a severe and egregious violation that caused profound harm and suffering to the Plaintiff.

The Plaintiff's experience encapsulates a clear case of fraud. AgTexas's actions were not only financially damaging but also morally reprehensible, putting the Plaintiff in a dire situation that extends beyond financial loss to personal and emotional trauma.

## 26. Clarification on Conversion and Definition of Money

On page twelve of the Defendant's *Motion to Dismiss*, it is stated: "Additionally, Plaintiff appears to argue that AgTexas has committed conversion because he was required to repay his loan to AgTexas using 'Federal Reserve Notes', a/k/a actual money."

This statement is not only incorrect but also laughable. If this were an affidavit, the Plaintiff would consider prosecuting it as perjury upon the court. According to UCC Article 3-102(a): "This Article applies to negotiable instruments. It does not apply to money." A Federal Reserve Note is a negotiable instrument (an unconditional promise to pay) and not "money" in the legal sense under UCC Article 3.

The Defendant's apparent misunderstanding of the nature of Federal Reserve Notes is astonishing, especially considering that this clarification is being provided by a dairy farmer to a legal professional working on behalf of a massive financial organization. The Plaintiff's argument is based on a clear understanding of UCC Article 3, which governs negotiable instruments, and the Defendant's mischaracterization of Federal Reserve Notes as "actual money" is a significant error that undermines their argument.

17

**27. Conversion of Money**

On page twelve of the Defendant's *Motion to Dismiss,* it is stated: "Moreover, a claim for the conversion of money arises only where the money can be identified as a specific chattel, meaning it is '(1) delivered for safe keeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper.'"

In this context:

1. **Delivered for Safe Keeping**: The original note was transferred to the defendant for safekeeping and exchange for Federal Reserve Notes.

2. **Intended to Be Kept Segregated**: The original note was to be kept segregated specifically to fund the "loan."

3. **Substantially in the Form Received or an Intact Fund**: The account number is where the funds should have been deposited once they were returned from the Federal Reserve Window after being processed via 12 USC 412.

4. **Not the Subject of a Title Claim by the Keeper**: The special indorsement allows the indorsee to state the payee and can name his franchise, HENRIK HAUSCHILDT, as the payee (which is the name on the account with AgTexas).

The Plaintiff's claim for conversion is valid under these conditions, as the original note and its proceeds meet the criteria for being identified as specific chattel. The Defendant's mischaracterization of the Plaintiff's claim overlooks the precise nature of the negotiable instruments involved and their intended handling and segregation.

**28. Conclusion**

In conclusion, several of the points raised by the Defendant have inadvertently bolstered and reinforced the Plaintiff's complaint with even more vigor. It is requested that this frivolous and wasteful attempt, disguised as a "motion to dismiss," be stricken from the record so that we can proceed to limited discovery. This will allow the parties to address the substantive issues at hand and engage in a constructive and adult manner, rather than resorting to tactics more befitting infants and persons of unsound mind.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Henrik Hauschildt respectfully requests that this Honorable Court:

1. **Deny Defendant's Motion to Dismiss**: Strike down the Defendant's Motion to Dismiss in its entirety as it is frivolous and baseless, having failed to adequately address the substantial and well-founded claims presented by the Plaintiff.

2. **Grant Limited Discovery**: Order limited discovery to allow the Plaintiff to obtain critical evidence, including:

   o The ledger transactions to prove the actual funding of the so-called "loan."

   o The original promissory notes with all indorsements.

   o Any and all documents related to the exchange of the original notes for Federal Reserve Notes.

3. **Declare Rights Under UCC Article 3**: Recognize and affirm the Plaintiff's rights under UCC Article 3, particularly regarding the negotiation and indorsements of the original promissory notes.

4. **Determine Fiduciary Duty**: Acknowledge AgTexas's fiduciary duty as a currency exchange in this contractual situation and its failure to disclose critical information, resulting in financial harm to the Plaintiff.

5. **Address Conversion Claims**: Confirm the validity of the Plaintiff's conversion claims, recognizing that the original note and its proceeds meet the criteria for being identified as specific chattel.

6. **Award Damages**: Grant Plaintiff compensatory damages for the financial and emotional harm suffered due to AgTexas's fraudulent actions, unjust enrichment, and conversion, including but not limited to:

   o   The value of the original promissory notes.

   o   Any collateral or assets wrongfully held or claimed by AgTexas.

   o   Damages for the Plaintiff's financial enslavement and peonage situation.

7. **Provide Injunctive Relief**: Issue an injunction preventing AgTexas from further unlawful actions against the Plaintiff, including the improper handling of negotiable instruments and any further attempts to seize the Plaintiff's assets.

8. **Grant Any Other Relief**: Provide any other relief that the Court deems just and proper to ensure fairness and justice in this matter.

By addressing these points, the Plaintiff seeks to rectify the injustices suffered and to prevent further harm, ensuring that the legal and financial principles governing negotiable instruments are upheld.

Dated:  July 19th, 2024                              RESPECTFULLY SUBMITTED,

HENRIK HAUSCHILDT

BY:      /s/ *Henrik Hauschildt*
Henrik Hauschildt, agent
910 E FM 219
Hico, Texas 76457
dhdairy@gmail.com
(254) 459-0352


**CERTIFICATE OF SERVICE**

I hereby certify that on July 19th, 2024, a copy of the foregoing was filed with the Clerk of this Court as is required by Pro Se litigants via ECF.  All counsel of record were served with the same.

***Distribution:***

Stephanie E. Schwab
Attorney for Defendant AGTEXAS FARM CREDIT SERVICES
NAMAN, HOWELL, SMITH & LEE, PLLC
8310 Capital of Texas Highway North, Suite 490
Austin, Texas 78731
(512) 479-0300
FAX (512) 474-1901
sschwab@namanhowell.com.