

## AG TEXAS
### FARM CREDIT SERVICES

January 26, 2024

Double H Dairy, LLC
910 E FM 219
Hico, TX  76457

Certified & Regular Mail
Receipt No. 91 7199 9991 7038 0765 5137

RE: Loan Nos. 179101622

Dear Mr. Hauschildt:

This letter is to notify you that AgTexas Farm Credit Services, ACA (the Association) has determined that the above-referenced loans are distressed, and we are informing you of your right to seek a restructure in accordance with the provisions of the Farm Credit Act of 1971 and applicable federal regulations found at 12 C.F.R. § 617.7400 et seq.  Based on the information available, the indicators used in this determination were:

> Loan Covenants established in relation to Trading Ratios and Net Margins are out of compliance

Alternatives to a formal restructure may range from you performing fully on your loan obligations in conformance with the loan contract or other modification, forbearance or agreements by the Association if doing so will cure the distress.

Enclosed you will find an Application for Restructuring, which should be completed in its entirety and returned to Association no later than March 14, 2024, to:

> AgTexas Farm Credit Services, ACA
> Chad Alleva
> PO Box 812
> Stephenville, TX  76401

Included with the application is the Association's restructuring policy for your review.  Please read this material carefully.  In order for us to evaluate your application, we will need the following:

- Completed Application for Restructuring (form enclosed)
- Completed personal & business (if applicable) financial statements
- Completed cash flow statements
- Tax returns for the past two years
- Verification of off-farm/W-2 income (if applicable)
- Full Debt Service Schedules personal & business (if applicable)

The decision to restructure a loan is based on an individual analysis of the facts and circumstances.

If you do not submit an application, or if we determine from your application that your loan is not suitable for restructuring, the alternative may be foreclosure.  We may elect to begin foreclosure action no sooner than 45 days after this notice and in accordance with the provisions of the note and deed of trust and/or security agreement executed in connection with your loan.  In such cases, we will have satisfied our legal obligations by giving you this opportunity to restructure your loan, and we will not be required to give you

Scanned with CamScanner

any further notice of this opportunity for restructuring before we begin foreclosure proceedings. If the loan is restructured and you do not perform under the restructure agreement, we may initiate foreclosure proceedings without future notice.

If you would like to arrange a meeting to discuss your application, review the status of your loan, discuss your financial condition, the suitability of your loan for restructuring, or if you have any questions concerning our policy or application procedures, please contact Chad Alleva at (254) 459-5038 or (254) 485-1261.

Sincerely,

Rodney Keeton
SVP Special Assets

### DISTRESSED LOAN RESTRUCTURING APPLICATION

#### AgTexas Farm Credit Services

Borrower / Applicant: _____

Address: _____

_____

_____

### INFORMATION REQUIRED FOR A COMPLETE APPLICATION:

1. Current financial statement (attached forms must be used);

2. Income / expense verification for the past three years (copies of IRS tax returns or other certified income statements);

3. Projected cash flow, including detailed income and expenses, family living costs, and a schedule of debt payments to all creditors for the next 12 month period (attached form should be used); and

4. Any additional information that may be required by the Association.

### TYPE OF LOAN RESTRUCTURING REQUESTED

This section should specify your request in detail, establishing a plan of action by which your ability to repay the loan is explained. The plan should include restructuring requested from other major creditors and assistance requested under government or private loan programs. Use additional paper if necessary:

_____

_____

_____

_____

_____

_____

_____   SIGNATURE: _____
Date

_____   SIGNATURE: _____
Date

_____   SIGNATURE: _____
Date

_____   SIGNATURE: _____
Date

(Must be signed by at least one person who signed the loan documents.)

Scanned with CamScanner

**AgTexas Farm Credit Services**                 **Policy Manual**

**Policy Name:**                                 **Distressed Loan Restructuring**

**Entity/Managing Authority**                    **PCA/FLCA/CCO**

**Organizational Area:**                         **Credit**

**Board Approved:**                              **October 2016, November 2019, December, 2020**

**Next Review Date:**                            **December, 2023**

**Reference:**                                   **§617.7000, 617.7005, 617,7010, 617.7015, 617.7300, 617.7305, 617.7310, 617.7315, 617.7405, 617.7410, 617.7415, 617.7420, 617.7425, 617.7430**

**PURPOSE AND OBJECTIVES**

All borrowers are expected to comply with contractual loan terms and conditions.  In those instances where the Association determines that a borrower's loan is distressed according to the definition included herein, then the Association shall give due consideration to restructuring the loan within the parameters prescribed in this policy.

**OPERATING PARAMETERS**

On the determination by the ASSOCIATION that a loan is or has become a distressed loan, one of the following written notices shall be provided to all primary obligors stating that the loan may be suitable for restructuring.

1.    A notice stating that the loan has been identified as distressed and that the borrower has the right to request a restructuring of the loan (non-foreclosure notice).

2.    A notice that the loan has been identified as distressed, that the borrower has the right to request a restructuring of the loan, and that the alternative to restructuring may be foreclosure (45-day notice). The Association must provide this notice a minimum of 45 days before beginning foreclosure proceedings with respect to any loan outstanding to the borrower. In the case of a loan involving more than one primary obligor, the Association will notify all primary obligors. Notices will be sent by certified mail to all obligors or may be hand delivered with signed acknowledgment by all obligors.  For borrowers in a bankruptcy proceeding, the Association will send the notice to the borrower and, if retained, the borrower's counsel. This notice must restate the language

Scanned with CamScanner

from the automatic stay provision to emphasize that the notice is not intended as an attempt to collect, assess, or recover a claim.

A separate notice will be mailed certified mail and regular mail to each obligor. The notice may be hand delivered as long as each obligor signs an acknowledgement of receipt of said notice.

The following shall be included with such notice:

1. A copy of this restructuring policy;
2. The appropriate forms necessary to enable the borrower to submit an application for restructuring the loan; and
3. A statement that the ASSOCIATION shall provide a reasonable opportunity for the borrower to personally meet with a representative of the Association to review the status of the loan, the financial condition of the borrower, and the suitability of the loan for restructuring, if the borrower should request.

### APPLICATION PROCEDURES

The borrower shall have 45 days from the receipt of the notice by the ASSOCIATION (as specified above under Notice to Borrowers) to submit an application for restructuring. If the application is not received by the ASSOCIATION within that time period and the 45-day notice has been provided to the borrower, the ASSOCIATION may initiate foreclosure proceedings and will have no obligation to consider an application once foreclosure proceedings have commenced. If there is more than one borrower liable on the loan, at least one borrower must sign the application for restructuring in order for the application to be considered.

### CONSIDERATION OF APPLICATION

When the ASSOCIATION receives an application for restructuring from a borrower a least cost analysis will be completed by the ASSOCIATION. This analysis will be used to assist in determining whether or not to restructure the loan, taking into consideration:

Whether the cost of restructuring the loan is equal to or less than the cost of foreclosure considering all relevant factors including:

1. The present value of interest and principal foregone by the lender in carrying out the restructure plan;
2. Reasonable and necessary administration expenses involved in working with the borrower to finalize and implement the restructuring plan;
3. Whether the borrower has presented a preliminary restructuring plan and cash flow analysis taking into account income from all sources to be applied to the debt and all

Scanned with CamScanner

assets to be pledged, showing a reasonable probability that orderly debt retirement will occur as a result of the proposed restructuring;

4. Whether the borrower has furnished or is willing to furnish complete and current financial statements in a form acceptable to the ASSOCIATION;

5. Whether the borrower is applying all income over and above necessary and reasonable living and operating expenses to the payment of primary obligations;

6. Whether the borrower has the financial capacity and the management skills to protect the collateral from diversion, dissipation or deterioration;

7. Whether the borrower is capable of working out existing financial difficulties, taking into consideration any prior restructuring of the loan, re-establishing a viable operation and repaying the loan on a rescheduled basis; and

8. In the case of a distressed loan that is not delinquent, whether restructuring consistent with sound lending practices may be taken to reasonably ensure that the loan will not become a loan that is necessary to place in nonaccrual status.

If borrower and ASSOCIATION cannot agree on supportable or realistic financial projections used in the application for restructure, the ASSOCIATION may use benchmarks to determine the operational input costs and chattel security values. Benchmarks may include, but are not limited to the borrower's 5-year production average, averages in the county where the borrower's operation is located, based on date from United States Department of Agriculture, local colleges or universities, or other recognized authority; and other such reasonable sources.

In the making of loans secured by a mortgage or lien on agricultural property, or in the loan restructuring process, the Association may not violate any state agricultural loan mediation program.

The U.S. Department of Agriculture (USDA) Agricultural Mediation Program makes grants to state-designated entities that provide alternative dispute resolution through mediation to agricultural producers, their lenders and others directly affected by the actions of certain USDA agencies. In mediation, a trained, impartial mediator helps participants review and discuss their conflicts, identify options to resolve disputes and agree on solutions. Ideally, this process helps avoid expensive and time-consuming administrative appeals and/or litigation.

These grants are administered by the Farm Service Agency (FSA). Cases covered by the grants include agricultural loans, whether made by USDA or commercial lenders, and disputes involving USDA actions on farm and conservation programs, wetland determinations, rural water loan programs, grazing on national forest system lands, pesticides, rural housing and business loans, and crop insurance.

RESTRUCTURING CRITERIA

If the ASSOCIATION determines, in its sole discretion, that the potential cost of restructuring the distressed loan, in accordance with a proposed restructuring plan is less than or equal to the potential cost of foreclosure, and it is probable that the plan will return the borrower to financial viability, the ASSOCIATION shall restructure the loan in accordance with the plan. The term "cost" as used herein includes all factors relevant to making a sound credit decision.

This policy shall not prevent the ASSOCIATION from proposing a restructuring plan for a borrower, but the ASSOCIATION is under no obligation to do so. The ASSOCIATION is not required to consider a distressed loan for restructuring unless the borrower submits an application for restructuring pursuant to this policy.

If two or more qualifying restructuring alternatives are available to the ASSOCIATION under this policy with respect to a distressed loan, one or more of which alternatives may be proposed by the ASSOCIATION, the ASSOCIATION shall restructure the loan in conformity with the alternative that results in the least cost to the ASSOCIATION.

NOTICE OF DECISION

The Association will provide a written decision on an application for restructuring and provide this decision to the borrower within 15 days from the conclusion of the negotiations used to develop the application for restructuring. The written notice shall be by certified mail or a written acknowledgment of receipt by the primary obligor. If there is more than one primary obligor, the original notice may be provided to the primary obligor identified to receive such notice, with copies provided by regular mail to the other obligors. its decision to the borrower, including the terms and conditions of the restructuring if approved, or the reasons for denial and any critical assumptions and relevant information which the reasons are based except any confidential information shall not be disclosed. The notice shall also advise the borrower of his right to: (a) receive a review of an adverse decision as provided for herein; (b) have an outside appraisal done at the borrower's expense by an appraiser chosen from the ASSOCIATION's list of approved appraisers; and (c) be accompanied by counsel or any other representative of his choice at the credit review hearing.

If no application for restructuring is submitted by the borrower within the 45-day period or default is not cured, the Association will provide a written notice notifying the primary obligor that the rights provided under this policy are no longer available. The written notice may be by regular mail.

REVIEW

A borrower who has received notice of a decision to deny an application for restructuring a distressed loan may request a review of such decision by the ASSOCIATION's credit review committee (CRC). Any request for review must be made in writing within seven days of the

Scanned with CamScanner

borrower receiving the ASSOCIATION's written notice of its denial of restructuring. The borrower may appear in person before the credit review committee and may be accompanied by counsel or by any other representative of such person's choice, to seek a reversal of the decision on the application under review.

The borrower may submit any relevant documents or other information to support the information in the restructuring application. Review by the credit review committee will include the application, as supplemented by relevant documents or evidence supporting the information contained in the application.

As part of a Credit Review Committee review, an applicant may request an independent collateral evaluation of the agricultural real estate securing the loan or being offered as security, regardless of whether collateral was an identified reason for the adverse credit decision. The independent collateral evaluation may be for any interest(s) in the property securing the loan, except stock or participation certificates issued by the Association and held by the applicant or borrower.

The independent collateral evaluation must be conducted by an independent evaluator. The CRC will provide the applicant or borrower with a list of three independent evaluators approved by the Association within 30 days of the request for an independent collateral evaluation. The applicant or borrower must select and engage the services of an evaluator from the list. The evaluation must comply with the collateral evaluation requirements of part 614, subpart F, of FCA Regulations. The qualified lender must provide the applicant or borrower a copy of part 614, subpart F, for presentation to the selected independent evaluator. A copy of part 614, subpart F, signed by the evaluator is a required exhibit in the subsequent evaluation report.

The applicant or borrower must enter into a contractual arrangement for evaluation services within 30 days of receiving the names of three approved independent evaluators. The contractual arrangement must be a written contract for services that complies with the Association's appraisal standards. The evaluation must be completed within a reasonable period of time, taking into consideration any extenuating circumstance. The applicant or borrower is responsible for the costs of the independent evaluation.

The CRC will consider the results of any independent collateral evaluation before making a final determination with respect to the loan or restructuring, except the CRC is not required to consider a collateral evaluation that does not conform to the collateral evaluation standards described in part 614, subpart F.

The CRC will render a final decision, not later than 30 days after the meeting on the request under review. The CRC will make every reasonable effort to conduct reviews and render decisions in as expeditious a manner as possible. After making its decision, the committee must promptly notify the applicant or borrower in writing of the decision and the reasons for the decision.

Scanned with CamScanner

## EFFECT OF RESTRUCTURING ON BORROWER STOCK

The borrower shall be entitled to retain at least one share of stock in a formally restructured loan to maintain membership and voting interest in the Association.

## PREVENTATIVE ACTIONS

Nothing contained in this policy shall be construed to prevent the ASSOCIATION from enforcing any contractual provisions that allow the ASSOCIATION to foreclose a loan, or from taking such other lawful action as the ASSOCIATION deems appropriate, if the ASSOCIATION has reasonable grounds to believe that the loan collateral will be destroyed, dissipated, consumed, spent, concealed or permanently removed from the State in which the collateral is located.

## DEFINITIONS

Distressed Loan means upon determination by a lender that the borrower does not have the financial capacity to pay according to its terms and, exhibits one or more of the following characteristics:

1. The borrower is demonstrating adverse financial and repayment trends.
2. The loan is delinquent or past due under the terms of the loan contract.
3. One or both of the factors listed above, together with inadequate collateralization present a high probability of loss to the ASSOCIATION.

Cost of Restructuring - In determining whether the potential cost to the ASSOCIATION of restructuring a distressed loan is less than or equal to the potential cost of foreclosure, the ASSOCIATION shall consider the following:

1. The present value of the interest income and principal foregone by the ASSOCIATION in carrying out the restructuring plan;
2. Reasonable and necessary administration expenses involved in working with the borrower to finalize and implement the restructuring plan, including attorneys' fees, costs and other expenses advanced by the ASSOCIATION pursuant to the loan documents
3. Whether the borrower has presented a preliminary restructuring plan and cash flow analysis taking into account income from all sources to be applied to the debt and all assets to be pledged, showing a reasonable probability that orderly debt retirement will occur as a result of the proposed restructuring;
4. Whether the borrower has furnished or is willing to furnish complete and current financial statements in a form acceptable to the Association;
5. Any other factors considered relevant by the ASSOCIATION that bear upon the individual restructuring decision, including but not limited to the following
6. Whether the borrower is applying all income over and above necessary and reasonable living and operating expenses to the payment of primary obligations;

Scanned with CamScanner

7. Whether the borrower has the financial capacity and the management skills to protect the collateral from diversion, dissipation or deterioration;
8. Whether the borrower is capable of working out existing financial difficulties, re-establishing a viable operation and repaying the loan on a rescheduled basis.

Loan - a loan made to a farmer, rancher, or producer or harvester of aquatic products, for an agricultural or aquatic purpose and other credit needs of the borrower, including financing for basic processing and marketing directly related to the borrower's operations and those of other eligible farmers, ranchers, producers or harvesters of aquatic products.

Borrower - the person and/or persons, including entities, which are primarily or secondarily liable for repayment of the loan.

Acquired agricultural real estate or property - agricultural real estate acquired by a System institution as a result of a loan foreclosure or a voluntary conveyance by a borrower who, as determined by the institution, does not have the financial resources to avoid foreclosure.

Application for Restructuring - a written request from a borrower for the restructuring of a distressed loan in accordance with a preliminary restructuring plan proposed by the borrower as part of the application; submitted on the appropriate forms prescribed by the ASSOCIATION; and accompanied by sufficient financial information and repayment projections as required by the ASSOCIATION to support a sound credit decision.

Cost of Foreclosure includes:

1. The difference between the outstanding balance due on a loan made by a ASSOCIATION and the liquidation value of the loan, taking into consideration the borrower's repayment capacity and the liquidation value of the collateral used to secure the loan;
2. The estimated cost of maintaining a loan as a nonperforming asset;
3. The estimated cost of administrative and legal actions necessary to foreclose a loan and dispose of property acquired as the result of the foreclosure, including attorney's fees and court costs;
4. The estimated cost of changes in the value of collateral used to secure a loan during the period beginning on the date of the initiation of an action to foreclose or liquidate the loan and ending on the date of the disposition of the collateral;
5. All other costs incurred as the result of the foreclosure or liquidation of a loan.

Foreclosure Proceeding means a foreclosure or similar legal proceeding to enforce a lien on property, whether real or personal, that secures a nonaccrual or distressed loan; or the seizing of

Scanned with CamScanner

and realizing on non-real property collateral other than stock, participation certificates, allocated surplus, or investments in equity reserve in a Farm Credit System institution.

Restructuring - rescheduling, re-amortization, renewal, deferral of principal or interest, monetary concessions, and the taking of any other action to modify the terms of, or forbear on, a distressed loan in any way that will make it probable that the operations of the borrower will become financially viable.

Lender means an institution of the Farm Credit System in the Texas District that makes loans (as the term loan is defined above), excluding CoBank ACB; and;

Other Financing Institutions ("OFI") - defined in Section 1.7(b)(1)(B) of the Farm Credit Act of 1971, as amended, but only with respect to discounted or pledged by such OFI to the Farm Credit Bank of Texas ("FCBT").

Previous owner:

1. The prior record owner who was a borrower from a System institution and did not have the financial resources, as determined by the institution, to avoid foreclosure on acquired agricultural real estate; or
2. The prior record owner who is not a borrower and whose acquired agricultural real estate was used as collateral for a loan to a System borrower.

System institution - a Farm Credit System institution, except a bank for cooperatives, which makes loans as defined in § 617.7000.

**AUTHORITY**
The Chief Executive Officer (CEO) or designee(s) shall have full authority to implement this policy. Approvals or rejections of all Distressed Loan Restructuring applications require prior approval from the regional or senior credit committee.

**EXCEPTIONS**
Pursuant to FCA Regulations, no exceptions will be granted for this policy.

**REPORTING**
Association will maintain a complete list of all formally restructured loans.

Scanned with CamScanner

0515UM

**BALANCE SHEET**
**AGTEXAS FARM CREDIT SERVICES**

NAME
Address
(H)                                (M)

| CURRENT ASSETS | | CURRENT LIABILITIES | |
|---|---|---|---|
| Cash & Savings | $ | Lender Principal | $ |
| | | Current Lender Interest Due | $ |
| Current Notes & Accounts Receivable | $ | Accrued Int. All Other Loans | $ |
| Marketable Securities | $ | Current Prin. Portion R/E Debt | $ |
| Market Livestock | $ | Current Prin. Portion Intermediate Debt | $ |
| Cash Value of Life Insurance | $ | Current Portion of Capitalized Leases | $ |
| Prepaid Items | $ | Loan On Life Insurance | $ |
| Inventories | $ | Estimated Income Tax | $ |
| Other | $ | Accounts Payable | $ |
| Borrower Stock | $ | Other | $ |
| Subtotal Current Assets | $ | Subtotal Current Liabilities | $ |
| INTERMEDIATE ASSETS | | INTERMEDIATE-TERM LIABILITIES | |
| Equipment | $ | L/T Portion Int. Term Debts | $ |
| Vehicles | $ | L/T Portion Capitalized Leases | $ |
| Retirement Funds | $ | Intermediate Portion PCA Renewal | $ |
| Other Securities | $ | Other | $ |
| Breeding Livestock | $ | | |
| PCA Term Stock | $ | | |
| Subtotal Intermediate Assets | $ | Subtotal Intermediate Liabilities | $ |
| LONG TERM ASSETS | | LONG TERM LIABILITIES | |
| Noncurrent Notes & A/R | $ | L/T Portion R/E Debts | $ |
| Investments in Partnerships & Corps | $ | Deferred Income Taxes | $ |
| Real Estate | $ | Other | $ |
| Other | $ | | |
| FLB Stock | $ | Subtotal Long Term Liabilities | $ |
| Subtotal Long Term Assets | $ | TOTAL LIABILITIES | $ |
| TOTAL ASSETS | $ | NET WORTH | $ |

| OWNER'S EQUITY | $ |
|---|---|
| Net Income from Sources | Salary / Business | $ |
| Other than Agriculture | Investment / Royalty | $ |
| | Retirement | $ |
| | Total Annual Other Net Income | $ |

| ANSWER YES OR NO TO THE FOLLOWING QUESTIONS | | |
|---|---|---|
| Are there any judgments of record against you? | Total Life Insurance Carried? | $ |
| Have you ever been or are you now in bankruptcy? | Amount Assigned? | $ |
| Are you party to any lawsuit? | Spouse Life Insurance? | $ |
| Do you have any contingent liabilities? | | |
| (Explain any YES answers) | | |

I (we) certify that the foregoing, including all schedules and attachments, is true and correct to the best of my (our) knowledge and fairly presents my (our) financial position as of the aforestated date; and I (we) further acknowledge that this lender is protected by federal statutes that make it a criminal offense to make a false statement in the above presentation of financial worth or to sell or convert to my (our) own use any property mortgaged to the lender.

Signature _____ ( / / )   Signature _____ ( / / )

Signature _____ ( / )   Signature _____ ( / / )

Scanned with CamScanner

BS1ASS

### NO 1 CASH & SAVINGS

| Name of Institution | Location | $ Checking | $ Savings | $ C.D.'s | TOTAL |
|---|---|---|---|---|---|
| | | $ | $ | $ | $ |
| | | $ | $ | $ | $ |
| | | $ | $ | $ | $ |
| | | $ | $ | $ | $ |
| | | $ | $ | $ | $ |
| | | | | TOTAL | $ |

### NO 2 NOTES & ACCOUNTS RECEIVABLE

| Name of Debtor | If Collateral Check Box | % Rate | Accrued Int. | Current Bal. | Long Term Balance |
|---|---|---|---|---|---|
| | ☐ Collateral | | $ | $ | $ |
| | ☐ Collateral | | $ | $ | $ |
| | ☐ Collateral | | $ | $ | $ |
| | ☐ Collateral | | $ | $ | $ |
| | | TOTAL | $ | $ | $ |

### NO 3 MARKETABLE SECURITIES/STOCKS & BONDS

| Name of Corporation | No. Shares | $ Cost | $ Restricted | Pledged(Y/N) | Market Value |
|---|---|---|---|---|---|
| | | $ | $ | | $ |
| | | $ | $ | | $ |
| | | $ | $ | | $ |
| | | $ | $ | | $ |
| | | | | TOTAL | $ |

### NO. 3A OTHER SECURITIES/STOCKS & BONDS

| Name of Corporation (Co-op) | No. Shares | $ Cost | $ Restricted | Pledged(Y/N) | Market Value |
|---|---|---|---|---|---|
| | | $ | $ | | $ |
| | | $ | $ | | $ |
| | | $ | $ | | $ |
| | | $ | $ | | $ |
| | | | | TOTAL | $ |

### NO 4 LIVESTOCK

| Description | No. Head | $ Per Unit | Brands | Age/Wt | Value |
|---|---|---|---|---|---|
| MKT | | $ | | | $ |
| | | $ | | | $ |
| | | $ | | | $ |
| | | $ | | | $ |
| | | $ | | | $ |
| | | | | SUBTOTAL MKT | $ |
| BREED | | | | | $ |
| | | | | | $ |
| | | | | | $ |
| | | | | | $ |
| | | | | | $ |
| | | | | | $ |
| | | | | SUBTOTAL BREEDING | $ |
| | | | | TOTAL | $ |

### NO 5 PRE-PAID ITEMS

| | If Collateral Check Box | Quantity | $ Per Unit | Value |
|---|---|---|---|---|
| | ☐ Collateral | | $ | $ |
| | ☐ Collateral | | $ | $ |
| | ☐ Collateral | | $ | $ |
| | ☐ Collateral | | $ | $ |
| | ☐ Collateral | | $ | $ |
| | ☐ Collateral | | $ | $ |
| | ☐ Collateral | | $ | $ |
| | | | TOTAL | $ |

### NO 6 INVENTORY

| Description | If Collateral Check Box | Quantity | $ Per Unit | Value |
|---|---|---|---|---|
| | ☐ Collateral | | $ | $ |
| | ☐ Collateral | | $ | $ |
| | ☐ Collateral | | $ | $ |
| | ☐ Collateral | | $ | $ |
| | ☐ Collateral | | $ | $ |
| | ☐ Collateral | | $ | $ |
| | ☐ Collateral | | $ | $ |
| | | | TOTAL | $ |

### NO 7 INVESTMENTS IN PARTNERSHIPS AND CLOSELY HELD CORPORATIONS

| | Nature of Business | % Owned | $ Personal Liability | Balance Sheet Attached Y/N | Value |
|---|---|---|---|---|---|
| | | | $ | | $ |
| | | | $ | | $ |
| | | | $ | | $ |
| | | | $ | | $ |
| | | | $ | | $ |
| | | | | TOTAL | $ |

Scanned with CamScanner

**NO 8 REAL ESTATE OWNED**

| No. | Location | % Owned | Acres | $ Cost | $ Improvements | $ Value |
|---|---|---|---|---|---|---|
| | II Homestead. Check (1-6 Only) | | | | | |
| 1 | W51 | | | $ | $ | $ |
| 2 | W51 | | | $ | $ | $ |
| 3 | W51 | | | $ | $ | $ |
| 4 | W51 | | | $ | $ | $ |
| 5 | W51 | | | $ | $ | $ |
| 6 | W51 | | | $ | $ | $ |
| 7 | | | | $ | $ | $ |
| 8 | | | | $ | $ | $ |
| 9 | | | | $ | $ | $ |
| 10 | | | | $ | $ | $ |
| 11 | | | | $ | $ | $ |
| 12 | | | | $ | $ | $ |
| 13 | | | | $ | $ | $ |
| 14 | | | | $ | $ | $ |
| 15 | | | | $ | $ | $ |
| 16 | | | | $ | $ | $ |
| | TOTAL | | | $ | $ | $ |

## LIABILITIES

| No.9 REAL ESTATE DEBTS (Match /w Corresponding Asset) Name | Final Payment Due | Annual Payment Amount | Rate | Accrued Interest | Current Principal | Long Term Principal | Total Debt |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | $ |
| 2 | | | | | | | $ |
| 3 | | | | | | | $ |
| 4 | | | | | | | $ |
| 5 | | | | | | | $ |
| 6 | | | | | | | $ |
| 7 | | | | | | | $ |
| 8 | | | | | | | $ |
| 9 | | | | | | | $ |
| 10 | | | | | | | $ |
| 11 | | | | | | | $ |
| 12 | | | | | | | $ |
| 13 | | | | | | | $ |
| 14 | | | | | | | $ |
| 15 | | | | | | | $ |
| 16 | | | | | | | $ |
| TOTALS | $ | | $ | $ | $ | | $ |

| NO. 10 INTERMEDIATE TERM DEBTS | Matures | Annual Pmt. | Rate | Acc. Int. | Curr. Prin. | Long Term Prin. | Total Debt |
|---|---|---|---|---|---|---|---|
| | | | | | | | $ |
| TOTALS | $ | | $ | $ | $ | | $ |

Utilized
k Box  NO 11 LEASES

| | Residual | Matures | Payment | Rate | Acc. Int. | Curr. Prin. | L/T (including Residual) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| TOTAL CAPITALIZED LEASES | $ | | $ | $ | $ | $ | $ |

**NO 12 ACCOUNTS PAYABLE**

| Description | Amount |
|---|---|
| | $ |
| | $ |
| | $ |
| | $ |
| TOTAL | $ |

## CASHFLOW LOAN PROJECTION

Name: _____  Period Covered: _____ to _____  December-00

| CASH RECEIPTS | TOTAL | January | January | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gov't Pymt | 0 | | | | | | | | | | | | |
| Livestock | 0 | | | | | | | | | | | | |
| Equipment | 0 | | | | | | | | | | | | |
| Grains | 0 | | | | | | | | | | | | |
| Cotton | 0 | | | | | | | | | | | | |
| Peanuts | 0 | | | | | | | | | | | | |
| CRP | 0 | | | | | | | | | | | | |
| Custom Farming | 0 | | | | | | | | | | | | |
| TOTAL RECEIPTS | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| EXPENSES | TOTAL | January | January | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Farm Insurance | 0 | | | | | | | | | | | | |
| Chemicals | 0 | | | | | | | | | | | | |
| Fert & Chemicals | 0 | | | | | | | | | | | | |
| Computing | 0 | | | | | | | | | | | | |
| Living Expenses | 0 | | | | | | | | | | | | |
| Labor | 0 | | | | | | | | | | | | |
| Land Lease | 0 | | | | | | | | | | | | |
| Miscellaneous | 0 | | | | | | | | | | | | |
| Equip Pymts & Expense | 0 | | | | | | | | | | | | |
| Oper Interest | 0 | | | | | | | | | | | | |
| Pickup Expenses | 0 | | | | | | | | | | | | |
| Repairs | 0 | | | | | | | | | | | | |
| Seed | 0 | | | | | | | | | | | | |
| Supplies | 0 | | | | | | | | | | | | |
| Taxes | 0 | | | | | | | | | | | | |
| Fuel Oil Diesel | 0 | | | | | | | | | | | | |
| TOTAL EXPENSES | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| CAPITAL ADVANCES | TOTAL | January | January | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| US Purchase | 0 | | | | | | | | | | | | |
| Equip Lease to Purchase | 0 | | | | | | | | | | | | |
| SBA Payment | 0 | | | | | | | | | | | | |
| Land Payments | 0 | | | | | | | | | | | | |
| Income Taxes | 0 | | | | | | | | | | | | |
| RENEWAL BALANCE | 0 | | | | | | | | | | | | |
| TOTAL ADVANCES | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| | January | January | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| END NET PRIN BAL | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| B Stock | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PRINCIPAL BALANCE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Stated Rate | | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Accrued Interest | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Accrued Interest Total | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

Scanned with CamScanner